UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**99-8228 CIV-MIDDLEBROOKS**

DIANNE JOHNSON, JEFFREY JOHNSON, LYNNE
JOHNSON, PAUL JOHNSON, PATRICIA WELLSPEAK,
SHARON PRATT, LAWRENCE PRATT and WARREN
JOHNSON, SR.,

    Plaintiffs.

Case N**MAGISTRATE JUDGE GARBER**

vs.

ICE BAN AMERICA, INC. and
IBAC CORPORATION,

    Defendants.

_____/

## COMPLAINT

Comes Now the Plaintiffs, Dianne Johnson, Jeffrey Johnson, Lynne Johnson, Paul Johnson, Patricia Wellspeak, Sharon Pratt, Lawrence Pratt and Warren Johnson, Sr. by and through undersigned counsel and hereby sues the Defendants, Ice Ban America, Inc. (hereinafter "Ice Ban") and IBAC Corporation (hereinafter "IBAC") and in support thereof sets forth the following:

### JURISDICTION

1. Dianne Johnson is a resident of the State of Florida at the address of 511 SW Bay Point Circle, Palm City, Florida 34990.

2. Jeffrey and Lynne Johnson are residents of the State of New York at the address of 12118 East Yates Center Road, Lyndonville, NY 14098.

1



)                                                    )

3.  Paul Johnson is a resident of the State of New York, at the address of 4919 Eagle Harbor Road, Albion, NY 14411.

4.  Patricia Wellspeak is a resident of the State of New York, at the address of 6112 South Bay Road, Cicero, New York, 13039.

5.  Sharon and Lawrence Pratt are residents of the State of New York at the address of 11 Willowbrook Drive, Lyndonville, New York, 14098.

6.  Warren Johnson, Senior is a resident of the State of New York at the address of 11951 E. Yates Center Road, Lydonville, NY 14098.

7.  Ice Ban is a Nevada Corporation and its principal place of business is located at 1201 U.S. Highway One, Suite 205, North Palm Beach, Fl 33408.

8.  IBAC is a Nevada Corporation and its principal place of business is located at 1201 U.S. Highway One, Suite 205, North Palm Beach, fl 33408.

9.  This complaint alleges violations of the Federal Securities Laws promulgated under the Securities Act of 1933 and the Securities Exchange Act of 1934 and this Court has jurisdiction over these claims by virtue of Federal subject matter jurisdiction.

10.  Each of the Plaintiffs in this cause have purchased securities from the Defendants as that term is defined in Section 2(1) of the Securities Act of 1933 and Section 3(a)(10) of the Securities Exchange Act of 1934.

FACTUAL ALLEGATIONS REGARDING THE PURCHASE OF ICE BAN STOCK

11.  Dianne Johnson holds stock certificate number 1052 for a total amount of 284,524 (two hundred eighty-four thousand, five hundred twenty-four ) shares in Defendant Ice Ban. She received 25 shares from her brother-in-law's purchase of 50 shares. Her shares constituted 24 percent of the

then outstanding shares of Ice Ban, Inc.. She purchased 100,000 shares of Ice Ban from Warren Johnson, Jr. by allowing him to charge $1,400 in incorporation costs to her Optima-American Express. These charges were made in August 1996, and she then received the certificates in September of 1996. When Defendant Ice Ban America, Inc. bought out Ice Ban in August of 1997, she received 284,524 shares of her percentage of ownership in Ice Ban, Inc.

12. Jeffrey and Lynne Johnson hold stock certificate numbers 1079 and 1080 for a total of 284,524 (two hundred eighty-four thousand, five hundred twenty-four) shares in Defendant Ice Ban. They purchased 250,000 (two hundred fifty thousand) shares for ten cents per share on September 3, 1996 with their M & T Bank check number 4872 for a total of $25,000. After Ice Ban, Inc. was incorporated in August of 1994, Mr. Johnson purchased a total of 50 shares, of which 25 went to Dianne Johnson. Mr. Johnson's shares constituted 24 percent of the outstanding shares of Ice Ban, Inc. which was tendered through an offer to buyout Ice Ban, Inc. for 1.3 million shares of restricted 144 stock in August 1997, to which he received 284, 524 (two hundred eighty-four thousand, five hundred twenty-four) shares for his percentage of ownership in Ice Ban, Inc.

13. Paul Johnson holds certificate number 1055 for a total of 148, 452 (one hundred forty-eight thousand, four hundred fifty-two) shares in Defendant Ice Ban. Mr. Johnson paid for his shares of Ice Ban, Inc. on October 1, 1994 from his G.E. Select, check number 701 in the amount of $2,500. Ice Ban, Inc. was bought out by Ice Ban America, Inc. for 1.3 million shares of restricted Ice Ban America stock. He received 148, 452 (one hundred forty-eight thousand, four hundred fifty-two) shares of restricted stock in Ice Ban America as a result of the buyout. On September 1, 1996, he purchased 150,000 (one hundred fifty thousand) shares of Ice Ban America from his Lockport Savings Bank account, check number 2628 for $15,000.

14. Patricia Wellspeak holds stock certificate number 1056 for a total of 74, 166 (seventy-four thousand one hundred sixty-six) shares of stock in Defendant Ice Ban. She purchased 7 ½ shares of Ice Ban, Inc at $200 per share. This was paid for by her check number 164 written to Jeff Johnson on September 1, 1994 for the amount of $1,500. When Ice Ban America, Inc. bought out the shareholders of Ice Ban, Inc, she received 74,166 (seventy-four thousand one hundred sixty-six) shares of Ice Ban America for her interest in Ice Ban, Inc.

15. Sharon and Lawrence Pratt hold stock certificate numbers 1053 and 1054 for the individual amounts of 142, 262 (one hundred forty-two thousand, two hundred sixty-two) each in Defendant Ice Ban. They purchased these shares drawn from the Merrill Lynch brokerage account of Lawrence Pratt with their Bank One account, check number 336 in the amount of $5,000. They purchased a total of 25 shares, which they split between the two of them and then later converted into stock in the Defendant Ice Ban.

16. Warren Johnson, Sr. holds stock certificate number 1050 for the amount of 100,00 (one hundred thousand) shares of stock in Defendant Ice Ban. Mr. Johnson received these shares as payment for the $225,000 that he paid for the franchise fee for Ice Ban, Inc and also for loans totaling $72,470.05 to Ice Ban, Inc. The $225,000 was paid for in two parts, one part was paid by check number 4152 payable to Dianne Johnson on March 28, 1994 for $125,000. The other $100,000 was paid for via wire from Riverside National Bank, Ft. Pierce, FL, ABA No. 06701142 to the credit of Dianne Johnson's account number 10002141708.

17. All of the stock in Defendant Ice Ban which is presently held by the Plaintiffs's in certificate form and which is referred to in paragraphs 11 through 16 is hereinafter referred to collectively as the "Plaintiffs' Ice Ban Stock".

## FACTUAL ALLEGATIONS REGARDING THE PURCHASE OF IBAC STOCK

18. Dianne Johnson holds certificate number 527 for a total of 570,000 shares in IBAC. Ms. Johnson obtained these shares with check number 108 dated November 3, 1997 from her Paine/Webber account in the amount of $3585. Out of this amount, Paul Johnson received 200,000 (two hundred thousand) shares. Ms. Johnson is also trustee for 900,000 (nine hundred thousand) shares, certificate numbers 209 and 210 for the amount of 450,000 (four hundred fifty thousand) shares each.

19. Jeffrey Johnson holds certificate number 206 for the amount of 2,000,000 (two million) shares in IBAC. These shares were purchased with his M & T Bank check number 5825 dated October 2, 1997 for the amount of $2,000.

20. Paul Johnson holds certificate number 259 for the amount of 200,000 (two hundred thousand) shares in Defendant IBAC. These shares were purchased by Dianne Johnson as a gift to Mr. Johnson. They were paid for out of her Paine/Webber account, check number 108, dated November 3, 1997 for the amount of $3,585.

21. Patricia Wellspeak holds certificate number 314 in the amount of 200,000 (two hundred thousand) shares in Defendant IBAC. These shares were given to Ms. Wellspeak by Dianne Johnson. Ms. Johnson paid for these shares with her Paine/Webber account, check number 108, dated November 3, 1997 for the amount of $3,585.

22. Sharon Pratt holds certificate number 287 in IBAC Corporation, for a total of 100,000 (one hundred thousand) shares in Defendant IBAC. These shares were given to Ms. Pratt by Dianne Johnson. Ms. Johnson paid for these shares with her Paine/Webber account, check number 108, dated

November 3, 1997 for the amount of $3,585.

23.     All of the stock in Defendant IBAC which is presently held by the Plaintiffs's in certificate form and which is referred to in paragraphs 18 through 22 is hereinafter referred to collectively as the "Plaintiffs' IBAC Stock".

## COMMON ALLEGATIONS TO ICE BAN AND IBAC STOCK

24.     The Defendants are both operated by George Janke who was the primary representative of each Defendant with regard to the sales of securities and conversion of securities to each of the Plaintiffs.

25.     The Plaintiffs' Ice Ban Stock was tendered to Defendant Ice Ban based upon representations made by George Janke that all of the Plaintiffs' stock would become immediately free trading upon the expiration of the appropriate holding period under Rule 144 of the Securities Act of 1933.

26.     The Plaintiffs' IBAC Stock was purchased based upon representations made by George Janke that all of the Plaintiffs' stock would become free trading upon the expiration of the appropriate holding period under Rule 144 of the Securities Act of 1933.

27.     The appropriate holding period under Rule 144 of the Securities Act of 1933 has been satisfied with regards to the Plaintiffs' Ice Ban Stock and the Plaintiffs' IBAC Stock and George Janke, who is the authorized representative has refused to permit said securities to become free trading even though said shares are lawfully eligible to become free trading and all conditions precedent have been satisfied.

)					)

### COUNT I
Brought by All Named Plaintiffs on
Against
All Named Defendants Under Section 10 (b) of the Exchange Act and Rule
10(b)-5 Promulgated Thereunder
(Fraud or Deceit - Manipulative and Deceptive Devices)

28. The allegations of paragraphs 1 through 27 are incorporated herein and realleged as though fully set forth.

29. This Count is brought on behalf of all Plaintiffs's,

30. Prior to and throughout the time the Plaintiffs's received their stock in each respective Defendant, the named defendants, directly and indirectly, singly or in concert, and aiding and abetting one another, engaged in an unlawful combination, conspiracy and course of conduct pursuant to which defendants defrauded Plaintiffs. Defendants made various untrue statements of material fact and omitted to state other material facts necessary in order to make the statements made, inlight of the circumstances in which they were made, not misleading to Plaintiffs. Defendants' misrepresentations and omissions herein alleged constituted a device, scheme or artifice to defraud Plaintiffs and constituted acts, practices and courses of business which would and did operate as a fraud or deceit upon Plaintiffs in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

31. The purpose and effect of defendants' misrepresentations and omissions, all of which were part and parcel of a common scheme and conspiracy to defraud, was to cause the Plaintiffs to convert into or to purchase securities of Defendants and to make such purchases for grossly excessive consideration. Each such omission and misrepresentation was interconnected and each of them, singly and cumulatively, concealed the true condition of and intentions of the

Defendants from Plaintiffs and the investing public and all such acts had the effect of supporting the market prices for Defendants securities'.

32. The fraudulent practices and devices utilized by the defendants in order to effectuate the aforesaid fraud consisted of misrepresentations of material facts by the defendants, who knew or should have known them to be false when made, who intentionally concealed them and who failed to disclose omitted material facts which were necessary in order to make the statements made not misleading to Plaintiffs.

33. These misrepresentations and omissions, as described herein, were wholly or in part contained in or omitted from the prospectuses, annual reports, interim reports and press releases, including but not limited to those documents specified above, all of which were prepared by Defendants with the participation, acquiescence, cooperation, encouragement and assistance of the management of defendants herein. Each defendant joined this common scheme and conspiracy at or about the time he either became an officer or director of each.

34. Defendants, by the acts and transactions set forth herein, have used the means and instrumentalities of interstate commerce, and of the mails, to engage in acts, practices, courses of business and manipulative and deceptive devices and contrivances, all constituting and operating as a fraud in violation of Section 10(b) of the Exchange Act and the rules and regulations promulgated thereunder.

35. By reason of Defendants' misrepresentations and omissions, as alleged herein, the market price of Defendants securities was caused to be inflated artificially, with the intent and result of deceiving and inducing Plaintiffs to purchase and/or convert the securities at the inflated market prices, and thereby Plaintiffs have been injured.

Wherefore, Plaintiffs request general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

### Count II
Brought by All Named Plaintiffs on
Fraud and Reckless Misrepresentation against
all Named Defendants.

36. The allegations of paragraphs 1 through 27 are incorporated herein and realleged as though fully set forth.

37. In committing the acts and practices alleged, defendants acted fraudulently and recklessly to the detriment of Plaintiffs in violation of common-law principles of fraud and reckless misrepresentation. Defendants made intentional misrepresentations of material fact which the Plaintiffs detrimentally relied upon and were damaged.

38. Plaintiffs have been damaged as the proximate result of defendants' wrongful conduct.

Wherefore, Plaintiffs request general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

### Count III
Common Law - Negligence

39. The allegations in paragraphs 1 through 27 are realleged and incorporated herein.

40. The conduct of defendants described above constitutes negligence and such negligent conduct caused damages to Plaintiffs. Said Defendants owed Plaintiffs a duty and breached said duty.

41. As a result of the negligence of defendants, Plaintiffs suffered damages.

Wherefore, Plaintiffs request general damages, punitive damages, trial by jury and

such other relief as this court deems appropriate.

## Count IV
### Common Law - Misrepresentation

42. The allegations in paragraphs 1 through 27 are hereby realleged and incorporated herein.

43. Defendants, by their conduct, breached their common-law duty to the Plaintiffs by fraudulently concealing from Plaintiffs and failing to disclose all material facts regarding the financial condition of Defendants at the time of the April Offering and by affirmatively making untrue statements about Defendants, as previously alleged.

44. Defendants engaged in this conduct with the intent to deceive, manipulate or defraud or with a reckless disregard.

45. As a result of the violations of law described in this claim, Plaintiffs suffered damages.

Wherefore, Plaintiffs request general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

## Count V
### Breach of Fiduciary Duty

46. Paragraphs 1 through 27 are realleged.

47. Defendants owed fiduciary duties to Plaintiffs with respect to disclosing all relevant information regarding the Plaintiffs' investments and releases of their securities.

48. The misrepresentations and omissions set forth above, and the participation by the Defendants in the promotion of the investments, the actions with respect to financing and the manner in which the defendants performed their duties constituted breaches of their fiduciary duties to Plaintiffs.

10

49.  By virtue of Defendants' breaches of fiduciary duties, Plaintiffs have been damaged in the amount of their investments, plus lost use of the money invested, and other damages.

Wherefore, Plaintiffs request general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

### Count VI

Violation of Section 17 (a) of the Securities Act

50.  The averments of paragraphs 1 through 27 are incorporated in this claim.

51.  Defendants' conduct as described in this claim constitutes a violation of Section 17(a) of the Securities Act, in that:

(a) Defendant knew, or in the exercise of reasonable care and due diligence should have known, that the statements and representations made to Plaintiffs in connection with the purchase of stock, whether made directly or through written materials, were false and misleading and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(b) Defendants employed a device, scheme or artifice to defraud Plaintiffs, or engaged in a transaction, practice or course of business which operated or would operate as a fraud or deceit upon Plaintiffs;

(c) Defendants engaged in this conduct with the intent to deceive, manipulate or defraud, or with reckless disregard for the consequences of this conduct to Plaintiffs or were negligent in engaging in this conduct.

52.  Defendants are liable to Plaintiffs for all damages incurred by it as a result of this violation.

Wherefore, Plaintiffs request general damages, punitive damages, trial by jury and such other

relief as this court deems appropriate.

                                             David J. Feingold, Esquire
                                             Florida Bar No. 0892823
                                             FEINGOLD & KAM
                                             3300 P.G.A. Boulevard
                                             Suite 410
                                             Palm Beach Gardens, FL 33410
                                             (561) 630-6727

CIVIL COVER SHEET **99-8228**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I (a) PLAINTIFFS
DIANNE JOHNSON, JEFFREY JOHNSON, LYNNE JOHNSON, PAUL JOHNSON, PATRICIA WELLSPEAK, SHARON PRATT, LAWRENCE PRATT and WARREN JOHNSON, SR.

### DEFENDANTS
ICE BAN AMERICA and IBAC CORPORATION

CIV-MIDDLEBROOKS
MAGISTRATE JUDGE GARBER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David Feingold, Esquire
Feingold & Kam, 3300 P.G.A. Blvd.,
Ste. 410, Palm Beach Gdns, FL33410

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, **PALM BEACH**, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

### II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. CAUSE OF ACTION
Securities Act of 1933 and Securities and Exchange Act of 1934

IVa. **5** days estimated (for both sides) to try entire case.

### V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- B ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)
- B ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☒ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury — Med Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- B ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- B ☐ 220 Foreclosure
- ☐ 230 Rent/Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence — Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- B ☐ 720 Labor/Mgmt Relations
- ☐ 730 Labor/Mgmt Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- B ☐ 791 Empl Ret Inc Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- B ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

*A or B

### VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23
DEMAND $ _____
Check YES only if demanded in complaint.
JURY DEMAND: ☐ YES ☐ NO

### VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 3/19/99   SIGNATURE OF ATTORNEY OF RECORD [signature]

UNITED STATES DISTRICT COURT   FOR OFFICE USE ONLY: Receipt No. 71008 3   Amount: $150